**FIRST DIVISION
DOYLE, C. J.,
PHIPPS, P. J, and BOGGS, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 6, 2015**

# In the Court of Appeals of Georgia

A15A0606. LITTLE-THOMAS et al. v. SELECT SPECIALTY    DO-030
    HOSPITAL-AUGUSTA, INC.

DOYLE, Chief Judge.

Joyce Little-Thomas and Walter Thomas (collectively "the Plaintiffs") appeal from the grant of summary judgment to Select Specialty Hospital-Augusta, Inc. ("the Hospital") in their suit against the Hospital asserting various claims arising from a rape of Joyce by a Hospital employee. The Plaintiffs argue that the trial court erroneously construed the law or overlooked genuine issues of material fact as to their claims for negligent hiring, retention, and supervision and for premises liability. For the reasons that follow, we affirm in part and reverse in part.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to

the nonmoving party, warrant judgment as a matter of law. On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1]

So viewed, the record shows that in June 2009, Joyce was transferred to the Hospital to continue recovery after she was treated for a respiratory problem at another hospital. After several uneventful days of recovery, a certified nursing assistant ("CNA"), Warren Butler, came into Joyce's room one night and sexually assaulted her and raped her. Fearing a reprisal, Joyce did not report the incident until three days later when, suffering from abdominal pain and fearing infection, she notified her doctor. Following a police investigation, Butler eventually confessed and pleaded guilty to raping Joyce.

The Plaintiffs filed suit[2] based on theories of respondent superior; negligent hiring, retention, and supervision; and premises liability. Following discovery, the

[1] (Citation and punctuation omitted.) *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003), quoting *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[2] Walter filed a separate loss of consortium action that later was consolidated with Joyce's suit.

Hospital moved for summary judgment, and the Plaintiffs responded by voluntarily dismissing their respondent superior claim but otherwise opposing the motion. Following a hearing, the trial court ruled that there was an absence of evidence showing that (i) the Hospital's hiring process was unreasonable, (ii) Butler had demonstrated tendencies such that the Hospital should have foreseen that he might commit a rape, and (iii) the Hospital knew or should have known of a security issue arising from sexual assaults or rapes by employees in its facility. The Plaintiffs now appeal, arguing that summary judgment was improper because the evidence demonstrates genuine issues of material fact. We agree in part.

1. *Negligence in the decision to hire Butler*. Under OCGA § 34-7-20, "[a]n employer is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency. . . ." "Thus, the appellate courts have recognized that an employer may be liable for hiring or retaining an employee the employer knows or in the course of ordinary care should have known was not suited for the particular employment."[3] An employer's liability for such a tort arises

---

[3] *Munroe v. Universal Health Svcs., Inc.*, 277 Ga. 861, 862 (1) (596 SE2d 604) (2004).

3

only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff, such that it is reasonably foreseeable that the employee could cause the type of harm sustained by the plaintiff.[4]

Here, the evidence shows that the Hospital's hiring process included a written application, interview, confirmation of prior employment, a certification of Butler's CNA training, and a criminal background check. Butler's written application stated that he had worked as a CNA at three other healthcare providers, stated he had not been convicted of and was not then facing a felony charge, and listed three professional references. The Hospital's interviewer discovered no adverse information during the interview and rated Butler ten out of ten on fourteen of fifteen criteria, with the one remaining criteria ("promotability") rated as "n/a." The Hospital contacted two of Butler's prior employers who verified his employment dates but provided no other information. The criminal background check revealed a six-year-old misdemeanor conviction for passing a bad check. In sum, prior to Butler's employment, the Hospital had no information showing that Butler had tendencies to

---

[4] (Punctuation omitted.) *Allen v. Zion Baptist Church*, 328 Ga. App. 208, 213-214 (1) (b) (761 SE2d 605) (2014), quoting *Munroe*, 277 Ga. at 863.

engage in the criminal sexual behavior such that it was reasonably foreseeable that Butler might rape Joyce.[5]

The Plaintiffs nevertheless argue that if the Hospital had undertaken appropriate screening, it would have discovered from prior employers that he had at least once been terminated for rude and discourteous behavior. But under the applicable legal standard, even this does not rise to a sufficient showing of criminal or violent behavior such that, at the time it hired Butler, the Hospital overlooked Butler's propensity to act as a sexual predator.[6] There must be some evidence that the Hospital should have known of Butler's "tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff, such that it is reasonably foreseeable that the employee could cause the type of harm sustained by the plaintiff." Thus, while any inaccurate or incomplete information gathered by the Hospital may have concealed the fact that Butler was "an unsuitable employee for reasons unrelated to [Joyce's] injuries, no fact question remains as to [her] negligence claim that [the

---

[5] See *Munroe*, 277 Ga. at 865-866 (2). See also *Doe v. Fulton-Dekalb Hosp. Auth.*, 628 F3d 1325, 1337 (II) B) (1) (11th Cir. 2010) (concluding that hiring practice met the summary judgment standard in *Munroe* despite being "less than ideal").

[6] See *Munroe*, 277 Ga. at 866 (2).

Hospital failed to] exercise ordinary care to avoid hiring an employee who posed a reasonably foreseeable risk of inflicting" the type of harm suffered by Joyce.[7] Accordingly, because the evidence is plain and palpable that the Hospital's hiring process was reasonable, the trial court did not err by granting summary judgment as to the Hospital's negligence in its decision to hire Butler.[8]

2. *Negligence in retaining or supervising Butler as an employee.* As in the hiring context, an employer has a duty of ordinary care "not to . . . retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's "tendencies" or propensities that the employee could cause the type of harm sustained by the plaintiff. The employer is subject to liability only for such harm as is within the risk."[9] In applying this standard, the Supreme Court of Georgia has clarified that a plaintiff need not show the defendant employer knew or should have known of an employee's propensity to

---

[7] *Munroe*, 277 Ga. at 866 (2). See also *Allen*, 328 Ga. App. at 213-214 (1) (a).

[8] See *Munroe*, 277 Ga. at 864 (2) (trial court can conclude as a matter of law that defendant was not negligent if the evidence is plain, palpable, and undisputable), quoting *Robinson v. Kroger Co.*, 268 Ga. 735, 739 (493 SE2d 403) (1997).

[9] (Punctuation omitted.) *Munroe*, 277 Ga. at 863 (1), quoting Restatement (Second) of Agency, § 213 Comment (d).

6

commit the *specific* tortious or criminal act that caused the plaintiff's injury.[10] Rather, the plaintiff must only show that the harm she suffered was "within the risk" posed by the offending employee's tendencies.[11]

In granting summary judgment, the trial court ruled that the harm suffered by Joyce was not within the risk posed by Butler. In opposition to this, the Plaintiffs have identified evidence that Butler displayed unprofessional behavior on several occasions during his tenure with the Hospital. There is deposition testimony from one of Butler's coworkers stating that Butler would yell at patients and was "rough in handling them," he would "scream . . . throw things . . . cuss . . . rant [and] rave." She described Butler as aggressive toward patients and "very good at shutting the door when he went to do what he needed to do," and the co-worker reported her concerns to the Hospital chain of command. Further, there were a number of complaints documented by Hospital employees in 2008-2009: a male patient reported that Butler was "rough" and had a "big attitude"; a female patient reported that Butler was rude and did not want to clean up after her; a male patient reported that Butler was rude; and a male patient reported that Butler was "rough" with him. Other staff heard Butler

---

[10] See id.

[11] (Punctuation omitted.) Id.

7

refer to patients in a derogatory manner. When confronted with these complaints during a deposition, a former Hospital administrator employed over that time conceded that more should have been done to address the complaints about Butler.

In addition to evidence that the Hospital knew or should have known that Butler was generally rough, rude, and aggressive toward patients, the Plaintiffs have supplied evidence of an incident in 2004, in which Butler "inappropriately touched" a female patient. The evidence shows that the conduct in that case was aggressive, non-consensual sexual contact with a female patient who was physically vulnerable. According to the patient's son, he reported this event to the Hospital staff on duty at the time.

Viewing all of this evidence in the light most favorable to the Plaintiffs, as the summary judgment standard requires us to do, we conclude that a rational trier of fact could conclude that the Hospital knew or should have known that Butler displayed tendencies that could have caused the harm suffered by Joyce. We are mindful that "at the summary judgment stage, courts are required to construe the evidence most favorably towards the nonmoving party, who is given the benefit of all reasonable

doubts and possible inferences."[12] Even if one might doubt that Butler's well-documented rudeness and rough treatment of patients would, taken alone, amount to anything more sinister, we cannot ignore the evidence of a prior incident of non-consensual sexual conduct against a patient by Butler. Taken as a whole, and viewed in the proper light, the evidence supports an inference that the Hospital knew or should have known that Butler posed more risk than merely a poor bedside manner would portend.[13] Accordingly, the trial court erred by concluding that the harm Joyce suffered was outside of the risk posed by Butler's tendencies and conduct, and we reverse the grant of summary judgment as to the Plaintiffs' negligent retention claim.

3. *Premises liability claim*. Under OCGA § 51-3-1 "[w]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."

> With regard to premises-liability cases, . . . as a general proposition, issues of negligence . . . are not susceptible of summary adjudication,

---

[12] (Punctuation omitted.) *Smith v. Tenet HealthSystem Spalding*, 327 Ga. App. 878, 879 (1) (761 SE2d 409) (2014).

[13] See *Allen*, 328 Ga. App. at 215-216 (1) (c).

9

but should instead be resolved by trial in the ordinary manner; and . . . the trial court can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff only where the evidence is plain, palpable and undisputable. In practical terms, this means that issues such as how closely a particular [proprietor] should monitor its premises and approaches, what [proprietors] should know about the property's condition [or staff's conduct] at any given time, . . . are . . . questions that, in general, must be answered by juries as a matter of fact rather than by judges as a matter of law.[14]

With respect to liability for criminal acts occurring on the premises,

if the proprietor has reason to anticipate a criminal act, he or she then has a duty to exercise ordinary care to guard against injury from dangerous characters. Accordingly, the incident causing the injury must be substantially similar in type to the previous criminal activities occurring on or near the premises so that a reasonable person would take ordinary precautions to protect his or her customers or tenants against the risk posed by that type of activity.[15]

Here, the trial court ruled that the "[p]laintiffs have presented no evidence that *actual* sexual assaults had previously occurred on the premises such as to put [the

---

[14] (Punctuation omitted.) *Benefield v. Tominich*, 308 Ga. App. 605, 607 (1) (708 SE2d 563) (2011).

[15] (Citation and punctuation omitted.) *Sturbridge Partners v. Walker*, 267 Ga. 785, 786 (275 SE2d 339) (1997).

Hospital] on notice of an ongoing security issue."[16] But as pointed out by the Plaintiffs in the trial court and on appeal, the record contains evidence of sexual assaults on at least five female victims in Hospital rooms from 2004 to 2008, prior to Joyce's rape in 2009. In 2004, the Hospital received a complaint that Butler had inappropriately touched a female patient ; in 2007, the Hospital received a report that a male employee had raped a patient ; in 2007 or early 2008, the Hospital received another complaint from a patient accusing a male staff member of sexual assault ; and in 2008, the daughter of a female patient reported that a male nurse (identified as someone other than Butler) exposed himself to the two women while masturbating in the patient's room.[17]

The Hospital argues that these reports are not credible or were based on unreliable sources; but, again, the summary judgment standard requires courts to view the evidence in the light most favorable to the Plaintiffs as the nonmoving parties.

---

[16] (Emphasis in original.)

[17] The Plaintiffs argue that another assault occurred in 2006 but their record cites point only to argument by their attorney, which is not evidence. See *Vick v. Tower Place, L.P.*, 268 Ga. App. 108, 109 (2) (601 SE2d 348) (2004) ("Appellate judges should not be expected to take pilgrimages into records in search of error without the compass of citation and argument. In addition, it is a basic principle of evidence law that argument is not evidence.") (punctuation and footnote omitted).

11

Because of this, the trial court erred by concluding that the Plaintiffs had presented "no evidence of *actual* sexual assaults"[18] such that the Hospital was not aware of a potential security problem. These acts are substantially similar to the harm Joyce suffered, and there is evidence that each of the above sexual assaults was reported to the Hospital staff at the time they happened. Whether these reports were credible or warrant liability on the part of the Hospital are issues to be resolved by a jury and are not properly resolved by the trial court on summary judgment. Accordingly, we reverse the grant of summary judgment as to the Plaintiffs' premises liability claim.

*Judgment affirmed in part and reversed in part. Phipps, P. J., and Boggs, J., concur.*

---

[18] (Emphasis in original.)